UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AMERICAN TRANSIT INSURANCE                       :
COMPANY,                                          :       **MEMORANDUM DECISION**
                                                  :       **AND ORDER**
                            Plaintiff,            :
                                                  :         19-cv-5171 (BMC)
               - against -                        :
                                                  :
   YULIA BILYK, *et al.*,                          :
                                                  :
                                                  :
                            Defendants.           :
------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff moves for reconsideration of my order denying its motion for default judgment and dismissing the case.  Plaintiff is an automotive accident insurance company and claims that defendants submitted fraudulent policy claims under New York's no-fault insurance scheme.  I denied default judgment because I concluded that plaintiff did not establish defendants' liability.

When a plaintiff files an unwieldy complaint, it runs the risk that a court will be unable to divine its claims.  It is not the Court's responsibility to parse through a generically pleaded 186-page complaint with more than 300 pages of annexed exhibits to figure out how its allegations and evidence relate to the 58 claims of relief contained within.  In its motion for reconsideration, unlike its motion for a default judgment, plaintiff for the first time draws the connections between the broadly pleaded allegations in the complaint and the detailed, but difficult to decipher, supporting exhibits.  The present motion does the work that should have been done in the complaint, or, at the very least, in the default judgment motion.  Upon this new showing, I conclude that there is adequate proof to establish defendants' liability on plaintiff's RICO and

fraud claims, but not as to the duplicative unjust enrichment claims.  However, plaintiff's showing also underscores that these defendants were not properly joined.

Accordingly, the motion for reconsideration is granted, the order denying the motion for default judgment is vacated, and the motion for default judgment is granted in part, subject to the filing fee condition described below, imposed to remedy the improper joinder.

## BACKGROUND

The complaint alleges fourteen different RICO enterprises and identifies three categories of defendant – "Retail," Wholesale," and "No-Fault Clinics" – with each alleged enterprise generally comprised of one of every category.  The "Retail Defendants" consist of medical supply companies and the individual defendants who own them; the "Wholesale Defendants" consist of companies and their owners who sell medical supplies to the Retail Defendants; the "No-Fault Clinics," which have not been sued in this action, provided or purported to provide medical services or devices to patients.

The activities of six alleged RICO enterprises are at issue in the present motion, the members of eight other alleged enterprises having settled the action.  These alleged enterprises are the Active Care Medical Supply Enterprise, the Bento Ortho Enterprise, the Maiga Products Enterprise, the Maxford Enterprise, the Pravel Enterprise, and the Sure Way NY Enterprise. Plaintiff alleges that these enterprises committed fraud in substantially similar ways but operated independently of one another, during different time periods and with different participants in order to submit fraudulent claims for reimbursement from plaintiff pursuant to New York's no-fault insurance scheme.

In general, each enterprise is alleged to have sought reimbursement for durable medical equipment and orthotic devices (together, "medical supplies") pursuant to a fraudulent billing

scheme. The Retail Defendants, through their individual defendant managers, submitted insurance claims that were fraudulent because they were false and misleading as to (i) the nature, quality, and cost of the medical supplies purportedly supplied; (ii) the amounts to which the Retail Defendants were entitled to be reimbursed; (iii) whether the medical supplies purportedly supplied were actually supplied; (iv) the actual wholesale cost of the medical supplies to the provider; (v) the prescription actually supplied, as items were often described generically to conceal the type of item prescribed; (vi) whether the medical supplies were medically necessary or merely prescribed and supplied pursuant to a predetermined protocol involving kickbacks and designed to maximize the charges the Retail Defendants and their managers could submit to insurers. One aspect of the schemes that connects the disparate enterprises to each other is that the Retail Defendants sometimes used the same "phantom codes," reimbursement codes that were not listed in plaintiff's fee schedule at the time the claim was submitted.

Plaintiff annexed dozens of charts to the complaint containing representative examples of the type of billing fraud committed by and through the defaulted Retail Defendants and, in its motion for reconsideration, has drawn the connections between those exhibits and the allegations in the complaint for the respective defaulted defendants.

Active Care Medical Supply Corporation is a retail supplier of medical supplies operated by Russell Ionin. The Active Care Medical Enterprise is alleged to have engaged in a pattern of racketeering activity, specifically through mail fraud, beginning around July 14, 2010. Through the Active Care Medical Enterprise, Ionin submitted a few paid and dozens of unpaid claims for medical supplies. For example, this enterprise submitted claims for (i) heat lamps and water circulating units using phantom codes, seeking reimbursement for $160 and over $620, respectively, despite providing cheaper supplies reimbursable for $20 and $200, respectively; (ii)

egg crate mattresses and bed boards, seeking reimbursement for over $95, using codes reserved for more expensive items, when the items provided were worth less than $50; and (iii) knee braces using codes reserved for medical supplies that require a customized fitting, when the item supplied was in fact a cheap, one-size-fits-all knee brace that was not custom fabricated and for which no customized fitting was performed.

Bento Ortho Inc. is a retail supplier of medical supplies operated by Oleksiy Gerasymenko.  The Bento Ortho Enterprise is alleged to have engaged in a pattern of racketeering activity, specifically through mail fraud, beginning around December 30, 2013. Through the Bento Ortho Enterprise, Gerasymenko submitted a few paid and dozens of unpaid claims for medical supplies.  For example, this enterprise submitted claims for (i) massagers and infrared heating lamps, seeking reimbursement for over $200 when the items provided were reimbursable, if at all, for less than $25; (ii) egg crate mattresses, seeking reimbursement for over $150, when the item provided was reimbursable, if at all, for $25; and (iii) knee braces using codes reserved for medical supplies that require a customized fitting, when the item supplied was in fact a cheap, one-size-fits-all knee brace that was not custom fabricated and for which no customized fitting was performed.

Maiga Products Corporation is a retail supplier of medical supplies operated by Maiga Borisevica.[1]  The Maiga Products Enterprise is alleged to have engaged in a pattern of racketeering activity, specifically through mail fraud, beginning around July 9, 2012.  Through the Maiga Products Enterprise, Borisevica submitted a few paid and dozens of unpaid claims for medical supplies.  For example, this enterprise submitted claims for (i) TENS/EMS units using

---

[1] Plaintiff does not seek default judgment on its claims against Maiga Borisevica due to its inability to serve this motion on her.  Because plaintiff has not otherwise prosecuted its claims against Maiga Borisevica, the complaint will be dismissed as to her.

phantom codes, seeking reimbursement for over $675, when the item provided was reimbursable at most for $20; and (ii) massagers, seeking reimbursement for over $75, when the item provided was reimbursable at most for $30.

Maxford Inc. is a retail supplier of medical supplies operated by Yuriy Denisov, who died in 2015.  Artur Denisov is the administrator of the estate of Yuriy Denisov.  The Maxford Enterprise is alleged to have engaged in a pattern of racketeering activity, specifically through mail fraud, beginning around February 14, 2013.  Through the Maxford Enterprise, Yuriy Denisov submitted several paid and dozens of unpaid claims for medical supplies.  For example, this enterprise submitted claims for (i) heat lamps and water circulating units using phantom codes, seeking reimbursement for $270 and $615, respectively, despite providing cheaper supplies reimbursable for $24 and $158, respectively; (ii) egg crate mattresses and bed boards, seeking reimbursement for over $125, using codes reserved for more expensive items, when the items provided were reimbursable for less than $50; and (iii) knee braces using codes reserved for medical supplies that require a customized fitting, when the item supplied was in fact a cheap, one-size-fits-all knee brace that was not custom fabricated and for which no customized fitting was performed.

Pravel Inc. is a retail supplier of medical supplies operated by Eduard Zarubin.  The Pravel Enterprise is alleged to have engaged in a pattern of racketeering activity, specifically through mail fraud, beginning around August 23, 2013.  Through the Pravel Enterprise, Zarubin submitted several paid and unpaid claims for medical supplies.  For example, this enterprise submitted claims for (i) massagers and infrared heating lamps, seeking reimbursement for over $200 when the items provided were reimbursable, if at all, for less than $30; (ii) egg crate mattresses and bed boards, seeking reimbursement for over $125, using codes reserved for more

5

expensive items, when the items provided were reimbursable for less than $50; and (iii) knee braces using codes reserved for medical supplies that require a customized fitting, when the item supplied was in fact a cheap, one-size-fits-all knee brace that was not custom fabricated and for which no customized fitting was performed.

Sure Way NY Inc. is a retail supplier of medical supplies operated by Tatiana Rodionova. The Sure Way Enterprise is alleged to have engaged in a pattern of racketeering activity, specifically through mail fraud, beginning around May 31, 2013.  Through the Sure Way Enterprise, Rodionova submitted several paid and dozens of unpaid claims for medical supplies. For example, this enterprise submitted claims for (i) massagers and hydrotherapy whirlpools, seeking reimbursement for $285 and $565, respectively, using codes reserved for more expensive items, despite providing cheaper supplies reimbursable for at most $30 and $45, respectively; (ii) egg crate mattresses and bed boards, seeking reimbursement for over $125, using codes reserved for more expensive items, when the items provided were reimbursable for less than $50; and (iii) knee braces using codes reserved for medical supplies that require a customized fitting, when the item supplied was in fact a cheap, one-size-fits-all knee brace that was not custom fabricated and for which no customized fitting was performed.

For each enterprise, plaintiff brings (i) a RICO claim against the individual defendant; (ii) a claim for common law fraud against the individual defendant and his wholly-owned corporation; (iii) a claim for unjust enrichment against the individual defendant and his wholly-owned corporation; and (iv) an "aiding and abetting claim" against John Does 1-20 and ABC Corporations 1-20.  Plaintiff's final claim is a catch-all declaratory judgment claim, seeking to absolve plaintiff of the need to pay any further claims submitted by the defendants.

**DISCUSSION**

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Drapkin v. Mafco Consol. Grp., Inc., 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quotation marks omitted). "Such motions are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice." Giuffre v. Maxwell, No. 15-cv-7433, 2020 WL 917057, at *1 (S.D.N.Y. Feb. 26, 2020) (quotation marks omitted). Here, plaintiff contends that I misconstrued the allegations in the complaint and that the applicable law, when applied to those allegations, demonstrates that plaintiff's motion for default judgment should have been granted.

Plaintiff timely filed this motion for reconsideration on December 28, 2020, then subsequently filed a Notice of Appeal on January 11, 2021. Generally, filing a notice of appeal divests a district court of jurisdiction. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). However, where, as here, the notice of appeal is filed while a timely filed motion for reconsideration is pending, the trial court retains jurisdiction over the post-judgment motion, and the notice of appeal does not become effective until entry of an order disposing of the motion. See Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) – the notice becomes effective to appeal a judgment or order . . . when the order disposing of the last such remaining motion is entered."); 4(a)(4)(A)(iv) (motion to alter or amend the judgment under Rule 59 or for relief under Rule 60 listed as qualifying post-

judgment motion); Hodge v. Hodge, 269 F.3d 155, 157 (2d Cir. 2001) (per curiam) (a timely filed motion listed in Rule 4(a)(4)(A)(i) postpones the effectiveness of the notice of appeal); Basciano v. Lindsay, No. 07-CV-421, 2008 WL 1700442, at *1 (E.D.N.Y. Apr. 9, 2008) ("[T]his court has jurisdiction to consider Petitioner's motion for reconsideration, notwithstanding his previous filing of a notice of appeal, and the notice of appeal will become 'effective' when this order disposing of the motion is entered."). Accordingly, I retain jurisdiction over the motion for reconsideration.

## I.  Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for plaintiff to obtain a default judgment. After the clerk enters the default of a defendant that "has failed to plead or otherwise defend," the court may, on plaintiff's motion, enter a default judgment if the defendant fails to appear or move to set aside the default under Rule 55(c). Fed. R. Civ. P. 55(a), (b)(2). On a motion for a default judgment, the court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (citation omitted). However, the party in default does not admit conclusions of law. See Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010).

"[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc., No. 08-cv-3168, 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009). Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

The defaulting defendants failed to appear or defend this lawsuit, and the Clerk has

entered their defaults.  Default judgment is thus warranted if plaintiff can establish their liability.

## II.      Joinder

In the order denying default judgment, I concluded that plaintiff had not established a

common enterprise of all defendants.  In its reconsideration motion, plaintiff explains that it

alleged separate RICO enterprises and that any allegations regarding the similarity of the

schemes was not intended to allege the existence of a RICO enterprise comprising all defendants.

Instead, such allegations were intended to demonstrate that the alleged facts were sufficiently

related to justify joinder under Rule 20 of the Federal Rules of Civil Procedure.  Now that I

understand plaintiff's claims were intended to allege fourteen entirely separate enterprises, I am

compelled to conclude that these parties were not properly joined.

Rule 20 permits the joinder of defendants if "any right to relief is asserted against them

jointly, severally, or in the alternative with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurs; ***and*** [] any question of law or fact common to all

defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2) (emphasis added).  Thus,"[j]oinder

under Rule 20 requires, in addition to a common question of law or fact, that the plaintiffs assert

a right to relief arising from 'the same transaction or occurrence.'"  Scott v. Chipotle Mexican

Grill, Inc., 954 F.3d 502, 520 (2d Cir. 2020) (cleaned up).  To determine whether allegations are

part of the same "transaction or occurrence," courts "look to the logical relationship between the

claims and determine 'whether the essential facts of the various claims are so logically connected

that considerations of judicial economy and fairness dictate that all the issues be resolved in one

lawsuit.'"  Kalie v. Bank of Am. Corp., 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (quoting United

States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979)).  Moreover, "the overlap in questions of law

or fact must be 'substantial' in order for joinder to be appropriate." <u>Golden Goose Deluxe Brand</u> <u>v. Aierbushe</u>, No. 19-CV-2518, 2019 WL 2162715, at *1 (S.D.N.Y. May 16, 2019).

Here, joinder of these defendants is improper. Plaintiff's claims against the different defendants are not transactionally related. As plaintiff underscores in the present motion, it did not assert any claims against all defendants, did not claim that all defendants worked together, and did not seek to hold all defendants jointly-and-severally liable. Instead, plaintiff's claims concern separate RICO enterprises that "operated independently of one another, during different time periods and with different participants." The enterprises are connected only in that they are alleged to have (separately) filed fraudulent claims pursuant to similar schemes.

The fact that other judges have declined to sever such unwieldy complaints is not compelling. Frankenstein's Monster-like complaints, bonded solely by allegations that defendants separately did the same bad thing, do not create efficiencies, as this case demonstrates. Plaintiff's causes of action concerned so many different bad actors that plaintiff did not bother to explain specifically what each was alleged to have done until now, and instead relied on hundreds of pages of exhibits to provide the specificity that should have been present in the body of the complaint. Having tried to understand how the generic claims in plaintiff's massive complaint and bare motion for default judgment related to each defaulted defendant, I must revisit the issue now that plaintiff has finally taken the time to draw those connections. Thus, such broad, unwieldy complaints are not a timesaver but in fact can result in a colossal waste of judicial resources. Joinder was not proper here and plaintiff is cautioned not to file another such complaint before me.

When the requirements of Rule 20 are not met, Rule 21 affords a district court "broad discretion" in fashioning an appropriate remedy, including the possibility of dropping a party "at

any time." Fed. R. Civ. P. 21.  However, dropping any defendant would not serve judicial economy at this late stage.  Most of the defendants have settled and those who have not settled have defaulted.  The evidence in support of plaintiff's motion for default judgment has been submitted, and severance would require the refiling of five separate actions supported by the same evidence.  Although severance would comply more faithfully with the letter of Rule 20, it would result in logistical hurdles and ultimately waste judicial resources.

Instead, to remedy this issue of improper joinder, I order plaintiff to pay five separate filing fees as there should have been six actions against these defendants for the six separate enterprises.[2]  The only economies gained in this case "accrue[d] exclusively to the benefit of plaintiff[], who [was] not required to pay separate filing fees for initiating litigation against each individual defendant." John Wiley & Sons, Inc. v. John Doe Nos. 1-22, No. 12 CIV. 4231, 2013 WL 1091315, at *3 (S.D.N.Y. Mar. 15, 2013).  But "the desire to avoid paying statutorily mandated filing fees affords no basis for joinder." Digital Sins, Inc. v. John Does 1-245, No. 11 CIV. 8170, 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012).  Filing fees serve two purposes: they are a revenue raising measure and they act as a modest threshold barrier against the filing of frivolous or otherwise meritless lawsuits. See John Wiley & Sons, 2013 WL 1091315, at *3. Allowing improper joinder results in significant lost revenue in filing fees and only encourages plaintiffs to join or misjoin as many defendants as possible.

As described below, plaintiff's motion for reconsideration will be granted and the motion for default judgment granted in part and denied in part.  However, this Order is subject to plaintiff first paying $2,010 to the Clerk of Court (five $402 filing fees for a civil case) within fourteen days with proof of payment filed on the docket in this action.

---

[2] Although plaintiff's complaint alleged fourteen distinct and separate legal entity RICO enterprises, I will not require plaintiff to pay additional filing fees for the claims that have already been resolved in this action.

## III.   Liability

Turning to the merits, I am convinced by plaintiff's new showing that there is adequate proof to establish defendants' liability on plaintiff's claims under RICO and for common law fraud, but plaintiff's unjust enrichment claims are dismissed as duplicative.

### A.   RICO Claims

"To establish a RICO claim, a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001). Plaintiff alleges a violation of Section 1962(c). "[T]o establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." Id. at 306.

The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[E]vidence of an ongoing organization, the associates of which function as a continuing unit, suffices to prove an enterprise." DeFalco, 244 F.3d at 307. "[T]he alleged 'enterprise' through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity." Allstate Ins. Co. v. Rozenberg, 590 F. Supp. 2d 384, 390 (E.D.N.Y. 2008). This is satisfied if a "formal legal distinction" exists between the individual defendants and the RICO enterprise. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001).

Plaintiff has established that each Retail Defendant constitutes an enterprise separate from its individual defendant manager. Plaintiff "has adequately explained specifically how the individual default defendants, independent of the enterprise corporation, perpetuated a fraud

through the various entity defaulting defendants." <u>Allstate Ins. Co. v. Abutova</u>, No. 13-CV-3494, 2017 WL 1185222, at *4 (E.D.N.Y. Feb. 15, 2017), <u>report and recommendation adopted</u>, 2017 WL 1184107 (Mar. 29, 2017).  Plaintiff identified the RICO persons associated with each RICO enterprise.  The defendants and the enterprises are distinct because the alleged enterprises are corporations and the individual defendants are natural persons.  <u>See Palatkevich v. Choupak</u>, No. 12-CV-1682, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ("[A] natural person named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met.").  "Since these allegations must be accepted as true in the context of a default judgment, courts have held that this degree of specificity in pleading is sufficient to satisfy the distinctiveness requirement under RICO, when alleged in the context of a no-fault billing insurance case."  <u>Abutova</u>, 2017 WL 1185222, at *4 (citation omitted).

Plaintiff must also show that defendants participated in a pattern of racketeering activity. 18 U.S.C. § 1962(c).  Racketeering activity, defined by 18 U.S.C. § 1961(1), refers to specific criminal acts, including mail fraud.  Federal mail fraud includes the "use of the mails in the execution of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" <u>Allstate Ins. Co. v. Howell</u>, No. 09-CV-4660, 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) (quoting 18 U.S.C. § 1341).  "A complaint alleging mail [] fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." <u>S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.</u>, 84 F.3d 629, 633 (2d Cir. 1996).

Here, plaintiff alleges that defendants participated in dozens of predicate acts of racketeering within a ten-year period.  Although it was initially difficult to discern the specifics of the alleged predicate acts in the complaint, plaintiff's motion for reconsideration connects the dots between the complaint and its annexed exhibits.  Plaintiff identifies the specific fraudulent schemes applicable to each defendant and the facts demonstrating that the individual defendants engaged in two or more acts of mail fraud by issuing fraudulent invoices that foreseeably would involve the use of mail in the ordinary course of business.  See Abramovich v. Oliva, No. 11-CV-1755, 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012).  These related acts extended over a substantial period of time and thus satisfy closed-ended continuity.  See Abutova, 2017 WL 1185222, at *5.  Plaintiff has further adequately pleaded that the acts alleged affected interstate commerce.

Accordingly, plaintiff has established each element of a civil RICO claim and is entitled to default judgment against the defaulted individual defendants on these claims.

## IV.    State law claims

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015).  Allegations of fraud must be pleaded with specificity.  See Fed. R. Civ. P. 9(b).

Here, plaintiff's complaint establishes its claims of common law fraud against the individual defendants and Retail Defendants.  Plaintiff claims that defendants, through false and misleading statements, fraudulently billed plaintiff for medical supplies.  Specifically, plaintiff alleges that defendants knowingly made material misrepresentations in submitting insurance

claims to plaintiff, including misrepresenting the nature, quality, and cost of the medical supplies, the amount they were entitled to be reimbursed, and whether the invoiced items were actually supplied to patients.  Such allegations satisfy "the material misrepresentation element of a New York common law fraud claim and the heightened pleading standards of Rule 9(b)." Allstate Ins. Co. v. Nazarov, No. 11-CV-6187, 2015 WL 5774459, at *15 (E.D.N.Y. Sept. 30, 2015).

Plaintiff also seeks default judgment on its claims for unjust enrichment.  "[O]n a motion for a default judgment, an unjust enrichment claim is only examined as an alternative to the conventional fraud claim, as it is available only in unusual situations when, though the defendant has not committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Abutova, 2017 WL 1185222, at *7 (quoting Gov't Emps. Ins. Co. v. Badia, No. 13-CV-1720, 2015 WL 1258218, at *16 (E.D.N.Y. Mar. 18, 2015)) (cleaned up). Because plaintiff's motion for default judgment is granted as to its common law fraud claims, the motion as to the unjust enrichment claims is denied as duplicative.

## V.  Declaratory judgment

In its final cause of action, plaintiff seeks a declaratory judgment that the Retail Defendants are not entitled to payment for any pending, unpaid claims.  A court may issue a declaratory judgment only where the moving party has established the existence of an actual case or controversy.  28 U.S.C. § 2201(a); E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001).  Courts have discretion over whether to issue a declaratory judgment and must consider whether the judgment would clarify the issues involved and finalize the controversy so as to offer relief from uncertainty.  Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir. 2003).  "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding

15

obligations relating to allegedly fraudulent claims." Gov't Emps. Ins. Co. v. Jacques, No. 14-CV-5299, 2017 WL 9487191, at *9 (E.D.N.Y. Feb. 13, 2017), report and recommendation adopted, 2017 WL 1214460 (Mar. 31, 2017).

In recent decisions, some district courts have "denied similar claims for declaratory relief against a defaulting defendant absent information about the status of pending state court collection actions" needed to conduct an abstention analysis. Id. (collecting cases). The courts have done so out of concern "that the existence of pending related lawsuits in state court 'presents the palpable risk that the issuance of a declaratory judgment by [the district] court would aid plaintiffs in "procedural fencing" or a "race to res judicata," or would "encroach on the domain" of any state court tribunals adjudicating any pending suits'" between plaintiff and defendants. Id. (quoting Gov't Emps. Ins. Co. v. Leica Supply, Inc., No. 11-CV-3781, 2013 WL 1334177, at *3 (E.D.N.Y. Mar. 30, 2013)).

Here, plaintiff submitted a chart demonstrating that 181 collections actions and arbitrations are pending between itself and the defaulted Retail Defendants. These actions seek payment for some of the over $1.1 million in unpaid claims. The record before me demonstrates that these are predominately state court actions but does not specify whether those suits predate the instant action, the procedural posture of the suits, or whether those suits involve questions of state or federal law. Some courts in this district faced with similar records have denied the motion for default judgment as to the declaratory judgment claim "without prejudice to renew upon a more detail description of the status, nature, and procedural posture of the pending actions." Leica Supply, Inc., 2013 WL 1334177, at *4 (E.D.N.Y. Mar. 30, 2013); see also Gov't Employees Ins. Co. v. Li-Elle Serv., Inc., No. 12-CV-2157, 2013 WL 829274, at *3 (E.D.N.Y. Mar. 6, 2013). However, those same courts, once presented with a more detailed record, have

declined to abstain from granting the requested declaratory relief.  See Gov't Emps. Ins. Co. v. Leica Supply, Inc., No. 11-CV-3781, 2014 WL 1311544, at *7 (E.D.N.Y. Mar. 28, 2014) (granting renewed motion for a declaratory judgment); Gov't Employees Ins. Co. v. Li-Elle Serv., Inc., No. 12-CV-2157, 2014 WL 1154244, at *3 (E.D.N.Y. Mar. 21, 2014) (same).

I will not require supplemental submission on this issue because on the present record I can conclude that "exceptional" circumstances and the "clearest of justifications" do not exist to justify the surrender of this Court's jurisdiction to issue a declaratory judgment.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983).  Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976).  As other courts in this district have found, the Colorado River factors do not weigh in favor of abstention in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims.  See, e.g., Jacques, 2017 WL 9487191, at *11; Li-Elle Serv., Inc., 2014 WL 1154244, at *7; Leica Supply, Inc., 2014 WL 1311544, at *7.  Here, defendants' actions in state court are not likely to dispose of plaintiff's claims before me, there is no evidence that plaintiff is merely attempting to manipulate the outcome of state court cases, the state law claims before me are not particularly complex, and it would be highly inefficient and duplicative for plaintiff to continue to litigate defendants' entitlement to payment in so many cases.  Accordingly, this case does not present the exceptional circumstances in which abstention is appropriate.

Turning to the merits of granting a declaratory judgment, plaintiff's complaint alleges with sufficient particularity how defendants' pending, unpaid claims are part of a fraudulent scheme to submit inflated claims.  Thus, plaintiff has established the existence of an actual controversy so as to warrant a declaratory judgment.  I conclude that plaintiff is not obligated to pay any of the defaulted Retail Defendants' pending claims.

## VI.    Damages

A party in default is deemed to concede all well-pleaded allegations of liability but does not admit damages.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012).  On a motion for default judgment, a plaintiff must prove damages with reasonable certainty.  See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  Under Rule 55 of the Federal Rules of Civil Procedure, a court "may conduct hearings or make referrals" when it needs to "determine the amount of damages [or] establish the truth of any allegation by evidence."  Fed. R. Civ. P. 55(b)(2).  However, "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing."  Chanel, Inc. v. Jean-Louis, No. 06-CV-5924, 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009).

A hearing on damages is not necessary because I can determine damages based upon plaintiff's detailed submissions, supported by sworn statements.  Here, in support of its motion for a default judgment, plaintiff submits an affidavit from Uriel McLeish, an Assistant Manager for plaintiff, detailing his review of plaintiff's payment summaries and records relating to defendants' no-fault insurance claims.  In addition, plaintiff submits payment summaries and tables detailing these payments and the relevant damages.  These submissions are sufficient to establish plaintiff's entitlement to recovery.  See Allstate Ins. Co. v. Tapper, No. 14-CV-5410, 2015 WL 6869702, at *5 (E.D.N.Y. Nov. 9, 2015).

18

A plaintiff bringing a RICO action may sue to recover "threefold the damages he sustains." 18 U.S.C. § 1964(c).  Awards of treble damages are appropriate upon default judgment.  Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd., No. 10-CV-5611, 2012 WL 1427796, at *9 (E.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).  Since the award of damages under RICO wholly compensates plaintiff and the award is trebled, I decline to award plaintiff prejudgment interest on the RICO claims.  See, e.g., Abou-Khadra v. Mahshie, 4 F.3d 1071, 1084 (2d Cir. 1993) (district court has discretion as to whether to award prejudgment interest on RICO claims); Nu-Life Const. Corp. v. Bd. of Educ. of City of New York, 789 F. Supp. 103, 105-106 (E.D.N.Y. 1992) (in cases where treble damages are adequate to compensate the plaintiff an award of prejudgment interest is inappropriate).  Plaintiff has demonstrated its entitlement to RICO damages in the following amounts:

RICO DAMAGES

| Defaulted Defendant | Cause of Action | RICO Enterprise | Compensatory Damages | Rico Damages (Treble) |
|---|---|---|---|---|
| Russell Ionin | 1st | Active Care Medical Supply | $69,466.74 | $208,400.22 |
| Oleksiy Gerasymenko | 5th | Bento Ortho | $12,002.37 | $36,007.11 |
| Artur Denisov, as Administrator of the Estate of Yuriy Denisov | 21st | Maxford | $14,097.25 | $42,291.75 |
| Eduard Zarubin | 29th | Pravel | $32,805.43 | $98,416.29 |
| Tatiana Rodionova | 45th | Sure Way NY | $22,149.93 | $66,449.79 |

Plaintiff is also entitled to recover compensatory damages for fraud from the Retailer Defendants.  See Allstate Ins. Co. v. Afanasyev, No. 12-CV-2423, 2016 WL 1156769, at *12 (E.D.N.Y. Feb. 11, 2016), report and recommendation adopted, 2016 WL 1189284 (Mar. 22, 2016) (plaintiffs entitled to compensatory damages for fraud from enterprise defendants).  Each Retail Defendant and its individual defendant manager are jointly and severally liable for those fraud damages.  In addition, plaintiff is entitled to pre-judgment interest on its state law fraud claims.  Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., No. 12-CV-4295, 2013 WL 5131057, at *9 (E.D.N.Y. Sept. 12, 2013) ("An award of pre-judgment interest on the state law fraud claims is not precluded by an award of treble damages on the RICO Act claims arising from the same conduct.").  Plaintiff has demonstrated its entitlement to fraud damages in the following amounts:

FRAUD DAMAGES

| Retailer Defendant | Cause of Action | Compensatory Damages | Prejudgment Interest[3] | Fraud Damages |
|---|---|---|---|---|
| Active Care Medical Supply Corp. | 2nd | $69,466.74 | $19,470.87 | $88,937.61 |
| Bento Ortho, Inc. | 6th | $12,002.37 | $4,985.14 | $16,987.51 |
| Maiga Products Corp. | 18th | $18,453.84 | $4,488.26 | $22,942.10 |
| Maxford Inc. | 22nd | $14,097.25 | $7,299.78 | $21,397.03 |
| Pravel Inc. | 30th | $32,805.43 | $16,984.85 | $49,790.28 |
| Sure Way NY Inc. | 46th | $22,149.93 | $11,282.22 | $33,432.15 |

---

[3] Prejudgment interest calculations are taken from Exhibit 23 to plaintiff's motion for default judgment.  Plaintiff requests that prejudgment interest be computed from the first day of the year following the payment of each fraudulent claim to defendants, an appropriate methodology.  See AMD Chiropractic, P.C., 2013 WL 5131057, at *9.  I have reviewed the calculations and conclude that they are correctly calculated.

However, because the RICO damages wholly compensate plaintiff and that award has been trebled, separate awards of damages on the common law fraud claims would amount to a double recovery for plaintiff.  See Gov't Emps. Ins. Co. v. Esses, No. 12-CV-4424, 2013 WL 5972481, at *10, n.3 (E.D.N.Y. Nov. 5, 2013).  Accordingly, the total damages award against each individual defendant will be the trebled RICO damages, plus prejudgment interest on the fraud damages, for which the associated Retail Defendant is jointly and severally liable for the total amount of fraud damages.  Thus, the total damages awards are as follow:

- Russell Ionin is liable for total damages of $227,871.09.  Active Care Medical Supply Corp. is jointly and severally liable for $88,937.61 of that amount.

- Oleksiy Gerasymenko is liable for total damages of $40,992.25.  Bento Ortho, Inc. is jointly and severally liable for $16,987.51 of that amount.

- Maiga Products Corp. is liable for total damages of $22,942.10.

- Artur Denisov, as Administrator of the Estate of Yuriy Denisov, is liable for total damages of $49,591.53.  Maxford Inc. is jointly and severally liable for $21,397.03 of that amount.

- Eduard Zarubin is liable for total damages of $115,401.14.  Pravel Inc. is jointly and severally liable for $49,790.28 of that amount.

- Tatiana Rodionova is liable for total damages of $77,732.01.  Sure Way NY Inc. is jointly and severally liable for $33,432.15 of that amount.

## CONCLUSION

Plaintiff's motion for reconsideration is granted.  Upon reconsideration, plaintiff's motion for default judgment is granted in part and denied in part: (i) plaintiff is entitled to default judgment against the defaulted defendants on its RICO and common law fraud claims, (ii) plaintiff's unjust enrichment claims are denied as duplicative, (iii) plaintiff is entitled to a declaratory judgment that it is not obligated to pay the unpaid insurance claims submitted by the defaulted defendants, and (iv) plaintiff is entitled to damages in the amounts described above. Entry of an Amended Judgment is deferred pending plaintiff's paying $2,010 to the Clerk of

Court, representing five $402 filing fees, within fourteen days with proof of payment filed on the docket in this action.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
January 21, 2021