```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
AMERICAN TRANSIT INSURANCE           :
COMPANY,                             :    **MEMORANDUM DECISION**
                                     :    **AND ORDER**
                 ATIC,               :
                                     :     19-cv-5171 (BMC)
         - against -                 :
                                     :
YULIA BILYK, *et al.*,               :
                                     :
                                     :
                      Defendants.    :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This RICO action is before me on the motion of defendants Russell Ionin and his wholly-owned company, Active Care Medical Supply Corporation, Inc., to vacate the default judgment against them pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). I find that the Ionin defendants' default was willful; that they have failed to demonstrate a meritorious defense; and that that have failed to show that ATIC would not be prejudiced by granting the motion to vacate. The motion is therefore denied.

## BACKGROUND

### I.     Procedural Background

Plaintiff American Transit Insurance Company ("ATIC") originally commenced this action against 29 different individuals and corporations and 40 John Doe defendants for fraudulent submission of insurance claims concerning the sale of medical devices. ATIC settled with most of the defendants and sought a default judgment against the five individual defendants

and five of their wholly owned companies who had not appeared.[1] The Clerk entered the default against these defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure between the end of December 2019 and the beginning of January 2020, and ATIC moved for entry of default judgment against them on February 10, 2020. The Ionin defendants were among those who had failed to appear and thus were the subject of the default judgment motion.

On February 21, 2020, while the motion for a default judgment was pending, Attorney Martin Wolf filed a notice of appearance on behalf of the Ionin defendants. He took no action in the case until, by sealed letter filed three weeks later, on March 6, 2020, Attorney Wolf requested a "telephone conference with the Court to discuss the withdrawal of [ATIC's motion for a default judgment] with leave to file an answer or if the same is not successful, to obtain a briefing schedule for the opposition and reply to the aforesaid motion for default." By Order that same day, I directed the unsealing of the letter (as there had been no grounds to file it under seal) and rejected the request for a telephone conference. However, I also noted that the proper procedure was for the Ionin defendants to move to vacate their default under Rule 55(c) of the Federal Rules of Civil Procedure upon a showing of good cause, and that the Ionin defendants were free to make that motion.

I heard nothing further from Attorney Wolf or the Ionin defendants. Nine months later, I proceeded to rule on the motion for a default judgment. Initially, I denied it. ATIC had not explained how the 186-page complaint and 300 pages of exhibits tied all of the defendants together in a common RICO enterprise. I therefore concluded that ATIC had failed to state a plausible claim. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("The fact that a complaint stands unanswered does not . . . suffice to establish liability on its

---

[1] ATIC also sought a default judgment against an additional company but not its owner, who ATIC had been unable to serve with the motion.

claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.").

However, by Order entered January 21, 2021, I granted ATIC's motion for reconsideration. ATIC's motion explained that the complaint actually alleged fourteen separate RICO schemes against groups of defendants and non-parties, and the reconsideration motion tied each of the defaulting defendants into their respective RICO schemes. The defaulting defendants were members of five of the fourteen separate RICO enterprises. ATIC made this showing, as to the defaulting defendants, by walking me through each fraudulent transaction described in the exhibits and matching it to the particular allegations as to each RICO enterprise, which it had not done in its motion for a default judgment. Recognizing that the pleading problem was one of improper joinder, not failure to state a claim, and that improper joinder is a waivable defense that need not be considered on a motion for a default judgment, I granted the motion for reconsideration, and, upon reconsideration, granted ATIC's motion for a default judgment.[2]

As against the Ionin defendants, the complaint alleges the following scheme. Many prescriptions for medical devices are generic in nature, allowing the provider discretion as to the particular type of device to provide. ATIC alleged that the Ionin defendants would bill ATIC for expensive items, using insurance codes reserved for such items, when the items actually provided were not the same expensive items and were in fact worth much less. Instead of charging for a regulatorily-allowed profit on the top of the wholesale cost of the item for which they billed ATIC, the Ionin defendants would receive a super-premium by buying a lower-cost item at wholesale and then billing for a higher-cost item which they did not provide.

---

[2] The default judgment was conditioned on ATIC's paying an additional five filing fees for the groups of defendants involved in the default judgment motion, as they should have been sued separately. ATIC has made those payments.

The complaint provided details of multiple transactions in which the Ionin defendants engaged in this practice. One of them, for example, was that the Ionin defendants charged for special customized knee braces that require a custom fitting, but only supplied a cheap one-fits-all brace. Another example is that the Ionin defendants would bill for "egg crate mattresses" that cost over $95, when the item provided was a cheap, thin mattress pad.

Having heard nothing more from Attorney Wolf or the Ionin defendants, the Clerk entered default judgment against them on January 27, 2021. Their liability was by far the largest against any of the defaulting defendants: $227,871.09 against Ionin, of which Active Care Medical was jointly and severally liable for $88,937.61.

Several weeks later, on February 11, 2021, a new attorney for the Ionin defendants, Raymond Zuppa, filed a letter motion requesting leave to file a motion to vacate the default judgment against those defendants. The request was purportedly made pursuant to my Individual Practice Rules. It made no mention of Attorney Wolf's submissions a year earlier. I denied the motion as unnecessary because: (1) my Individual Practice Rules do not require a premotion conference for a motion to vacate a default judgment; and (2) I had already informed Attorney Wolf nearly a year earlier that the Ionin defendants were free to make whatever motion they deemed appropriate.

The Ionin defendants filed their motion to vacate the default judgment on March 2, 2021.

## DISCUSSION

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Rule 60(b)(1), in turn, provides that a default judgment may be set aside due to "mistake, inadvertence, surprise, or excusable neglect." The Second Circuit has held that three factors

govern a district court's decision to set aside a default judgment under either Rule 55(c) or 60(b): "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); see also State St. Bank and Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004) ("When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by [the] three principal factors [mentioned above]."). These factors are applied more rigorously against a defendant after a default judgment has been entered. Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2692 (West 2021). Moreover, the preference for resolving disputes on the merits does not go so far as to relieve the defendant from the burden of proving the applicable factors. See Sony Corp. v. Elm State Elecs., 800 F.2d 317, 320 (2d Cir. 1985).

As the text of the Rules suggests and the applicable case law provides, "[t]he dispositions of motions for entries of defaults and default judgments and relief from the same . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil, 10 F.3d at 95. The scope of this discretion, however, is limited by the Second Circuit's "oft-stated preference for resolving disputes on the merits." Id. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Id. at 96. Nevertheless, the Second Circuit has recognized that default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary. Under

5

such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice." Id.

**I.   Willfulness**

The Ionin defendants offer a number of reasons why their failure to timely respond was a "mistake" or "inadvertent." The undisputed facts do not support that characterization for a greater number of reasons.

First, defendants assert that they had no knowledge of this action until they were served with ATIC's motion for a default judgment on February 10, 2020. I will assume that it is true. But the reason they did not receive it earlier was because of repeated failures on their part, despite the full portfolio of litigation in which the Ionin defendants have engaged (as described below), to comply with the legal requirements for receiving process. Defendants admit that Active Care changed its address in 2013. They further admit that they never advised the New York Department of State of their new address. That is the address at which ATIC effected service on Active Care, and thus defendants cannot and do not suggest that service was invalid. Instead, they characterize the outdated service address as a "mistake."

A major purpose of listing an address with the Department of State is to facilitate service of process. The Department of State was defendants' designated agent for service of process. By not changing their address, defendants all but ensured that any plaintiff would not provide them with notice.

Defendants argue that because their "mistake" happened in 2013, it was not their intent to evade process from this particular plaintiff. Again, that may be true, but it is not very important. This "mistake" was only the first of several identical mistakes. In fact, I do not see how defendants were able to pull this off while running a substantial business. Under New York

Business Corporation Law § 408, business corporations are required to file a Biennial Statement every two years with the New York Department of State. The Biennial Statement must set forth: (i) the name and business address of its chief executive officer, (ii) the street address of its principal executive office, (iii) *the address to which the New York Secretary of State shall forward copies of process accepted on behalf of the corporation* and (iv) the number of directors constituting the board and how many directors of such board are women. N.Y. Bus. Corp. § 408 (emphasis added); see also FAQs: Corporations & Business Entities, NYS Dep't of State, https://dos.ny.gov/faqs-corporations-business-entities (last visited June 23, 2021). As to the address to which the NYS Secretary of State shall mail a copy of process, "[s]uch address shall supersede any previous address on file with the department of state for this purpose." N.Y. Bus. Corp. § 408(c). This means there were at least three "mistakes," each occurring biennially, before ATIC attempted to serve Active Care through its authorized address. I therefore see the length of time without providing a current address to the Department of State as an aggravating rather than a mitigating factor.

      Maintaining non-compliance with this statute for so long a period is not consistent with "inadvertence" any more than crossing the street with one's eyes closed and then being hit by a car is inadvertent. That is why the courts have consistently held that the failure to maintain a current address with the Department of State is evidence of willfulness. See e.g. Trs. of Local 531 Pension Fund v. Am. Indus. Gases, Inc., 708 F. Supp. 2d 272 (E.D.N.Y. 2010) (failure of corporation to update address with Secretary of State for 30 years constituted "wilfulness or gross negligence in failing to comply with the law and update its address") (citing Estrella v. P.R. Painting Corp., 06-cv-717, 2006 WL 3359485, at *2 (E.D.N.Y. Nov. 20, 2006) ("it seems that the fault lies with the Defendant, since it is the one responsible for ensuring that its

7

registered address with the state for purpose of process is correct"); Swift Spinning Mills v. B & H Apparel, No. 00-cv-652, 2003 WL 942610, at *1-2 (S.D.N.Y. Mar. 5, 2003) ("[D]efaults caused by negligence may in some cases be excusable, but . . . [h]ere, [defendant's] failure to notify the Secretary of State of its change of address constitutes willful conduct, and is not excusable."), aff'd, 96 F. App'x 761 (2d Cir. 2004)).

This principle is especially applicable in this case because the Ionin defendants are no strangers to litigation. Defendants do not dispute that Active Care has appeared as a plaintiff in 3100 civil actions (presumably mostly collection actions) in the New York State courts, 700 of which were still pending during this action. Moreover, defendants have been sued by another insurance company in federal court based on RICO allegations similar to those here. See Gov't Emps. Ins. Co. v. Active Care Med. Supply Corp., 12-cv-5632 (E.D.N.Y. Nov. 15, 2012) ("The GEICO action").

Finally (as to this point), I reject Ionin's argument that ATIC should have looked up Active Care's address in the "white pages" because that would have shown its current address. Public directory listings are neither legally required nor generally reliable – compliance with Business Corporation Law § 408 is both.

Second, ATIC's attempt to personally serve Ionin shows that he has made himself, at least, a hard-to-get defendant. When ATIC attempted to serve him at what it believed was Ionin's address in New Jersey, the building's doorman told ATIC's process server that although Ionin owned the apartment, he did not reside there, and the apartment was vacant. ATIC therefore moved, and I granted, alternative service through Active Care at its listed address with the Department of State. (ATIC had no reason to know, nor did I, that Ionin had failed to update Active Care's service address with the Department of State for the last seven years.)

8

Since the service was made pursuant to my alternative service order, the Ionin defendants cannot and do not dispute that Ionin was validly served. Instead, they suggest that the affidavit of attempted service was "boilerplate," implying that the process server's conversation with the doorman may not have happened, and that ATIC's process server should have tried more than once to serve him in New Jersey before ATIC applied for alternative service. They point out that "Ionin has a demonstrated history of appearing and litigating suits against him" (although they deny that he is a "sophisticated litigant").

The affidavit of attempted service is not boilerplate. It is a customized description of what happened when the process server attempted service at Ionin's New Jersey address. And because the doorman told the process server that the apartment was unoccupied, it would have made no sense to keep returning to that apartment to attempt service. Moreover, despite Ionin's contention that he has a "demonstrated history of appearing and litigating," ATIC has shown that Ionin also has a history of "missing" service of process for various reasons at that address, and that the doorman gives different excuses to process servers why service cannot be made there. See Wells Fargo Bank, N.A. v. Ionin, et al., SWC-F-011309-19 (N.J. Super. Ct. Ch. Div. Dec. 2, 2019); The Watermark Condo. Residences Assoc., Inc. v. Ionin, HUD-L-004809-19 (N.J. Super. Ct. Law Div. July 30, 2020). Ionin does not contest that plaintiffs found him difficult to serve in at least two cases, but instead states only that the process servers should have mailed the summonses to him at that address despite what the doorman said; that he does "not have to sit around waiting to be served with process"; and that he eventually appeared and answered the complaint in both cases. This history contributes to my conclusion that Ionin appears in actions and litigates only when he wants to or believes he has to.

But the most obvious indicator of willfulness is Ionin's attempt to exculpate himself for not responding to the motion for a default judgment by shifting the blame to Attorney Wolf. It is undisputed that although Attorney Wolf knew of and advised Ionin of the pending motion for a default judgment (and thus the existence of the lawsuit) in February 2020; that I authorized them to seek appropriate relief at that time; and that they took no action until the filing of the instant motion nearly a year later, after the default judgment had been entered.

The excuses that the Ionin defendants offer for this are transparent. First, Ionin avers that Attorney Wolf advised him on December 17, 2020 that I had initially denied ATIC's motion for a default judgment (as noted above), and that advice caused Ionin to stand down. That may be, but it does not account for the total lack of attention to this case from February through December. And it does not explain, since the Ionin defendants were also served with ATIC's motion for reconsideration, why they did not appear at that point in opposition to the motion for reconsideration.

Second, it is undisputed that Ionin made no effort to check with Attorney Wolf to see what was going on between February 2020 and the entry of default judgment. The reason, according to Ionin, was that the pandemic in New York kicked in a month later and he took his family to his home in Florida to escape it. But they have telephones in Florida. It would have taken no more effort to dial Attorney Wolf's phone number in New York City from Florida than it would have taken to dial it from New Jersey.

The failure of Ionin to make any inquiry about what was happening to the pending default judgment motion against him for nine months is itself sufficient grounds to find willfulness. Even without that, however, I would reject the Ionin defendants' attempt to separate themselves from Attorney Wolf. He was their lawyer, after all. His failure to act is their failure

to act.  Where a party's attorney willfully defaults, that willfulness is imputed to the client for purposes of a Rule 60(b)(1) analysis.  See Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., No. 07 CIV. 0612, 2011 WL 4529605, at *3 (E.D.N.Y. Sept. 28, 2011) ("The Second Circuit has held that an attorney's willfulness may be imputed to the client 'where [the party] makes no showing that [s]he has made any attempt to monitor counsel's handling of the lawsuit,' or where the record is 'bereft of any indication of client diligence.'").  Moreover, it is notable that although the Ionin defendants remain in contact with Attorney Wolf (as the docket sheet indicates), they have not submitted an affidavit from him explaining why he took no action to follow up on his initial letter for month after month.

In sum, the circumstances surrounding the default judgment show such conscious and reckless disregard of the Ionin defendants' legal obligations that the default can only be characterized as willful.

### II.     Meritorious defense

Consistent with the broad discretion vested in the district courts on motions to vacate a default judgment, there is no single standard defining how robust a showing of a meritorious defense the movant must put forward.  Wright & Miller § 2697.  Most courts decline to accept conclusory statements, but beyond that, the degree of proof required varies depending on the facts of the case.  Id.

Here, there are good grounds to require more than the mere possibility that defendants have a meritorious defense.  First, the grounds of the defense are exclusively within their knowledge.  ATIC's complaint alleges a fraudulent billing scheme in which defendants participated, but that complaint is, as it must be, based on inferences that ATIC can draw from the final form of claims that it has received.  In contrast, defendants know exactly how their

billing and procurement practices worked and have or should have all the documents to show that they acted legitimately. But aside from affidavits from Ionin averring generally that everything was on the up-and-up, they have not responded to the specific identification of fraudulent transactions in ATIC's complaint.

As noted above, ATIC has pled a substantial number of specific fraudulent transactions. It should have been straightforward for defendants to demonstrate by documentary evidence and affidavits of the persons involved in providing and receiving the services that ATIC has misconstrued the claims and that at least a meaningful number of those transactions were not fraudulent. In addition, it is not as if defendants were pressed for time to make the necessary showing. As noted in the preceding section of this decision, they have had over a year to develop their meritorious defense and present it, and I would have given them even longer had they shown the need. The Ionin defendants did not have to prove the invalidity of ATIC's claims regarding each and every allegedly fraudulent transaction, but a solid sampling would have made the point. There is no such evidence in the affidavits.

Instead of doing that, the Ionin defendants have taken two tacks. First, they seek to relitigate whether the complaint states a claim against them, relying on my original decision denying entry of default judgment. I have again considered these arguments (now for the third time), but that ship has sailed. It was indeed difficult for me to see the single RICO scheme that I thought ATIC was trying to assert and I therefore initially denied default judgment. But that was because ATIC wasn't trying to state a single scheme. When ATIC pointed out in its motion for reconsideration that there were separate RICO schemes in the complaint, I found the claims against the defaulting defendants plausible. The Ionin defendants cannot simply repeat to me arguments that I have already rejected. Moreover, if they wanted to oppose default judgment on

that ground, they should have done it when they were timely served with the motion, instead of doing nothing for nearly nine months.

The Ionin defendants' second attempt to show a meritorious defense is to rely on moving and reply affidavits from Ionin himself. However, these affidavits are not convincing. For one thing, they contain a substantial amount of invective, criticism of ATIC's allegations, argument, opinion, hearsay, and conclusions that make it difficult to separate that which is admissible from that which is inadmissible under the Federal Rules of Evidence. For example, Ionin avers under oath that "[t]he medical allegations in the complaint contravene the very purpose of the no fault automobile insurance statute . . . ." Similarly, Ionin complains that "American Transit rails in the Complaint about the identity of treatment under a so-called 'Predetermined Treatment Protocol' theory, but its description is inconsistent and filled with contradictions," and that ATIC's allegations are "fabricated." Ionin's opinion on how ATIC has contradicted itself or his opinion that ATIC's allegations are not truthful is not something to which he could testify on the witness stand, and he is no more able to give that "testimony" in an affidavit. And Ionin asserts that "[o]ne cannot assert fraud because you say tomato and I say Tow-mato," which is a cute turn of phrase but also an argument which I would not permit a witness to use in testimony before a jury.

This kind of inadmissible, argumentative rhetoric pervades the affidavits despite the caution in my individual practice rules that "[w]itness or party affidavits will not be accepted if they violate the Federal Rules of Evidence, including those pertaining to hearsay, conclusions, and foundation." I am not going to strike the affidavits, but after having to wade through the rhetoric, there is not much left that establishes legitimate billing, coding, and provision of conforming medical equipment.

13

There are exceptions. One of the areas where Ionin's affidavits are sufficient is in describing how the business could operate in a legitimate manner. However, the affidavits say little to specifically engage the allegations in the complaint. They mostly duck the issue.

The case ATIC has pled as to the Ionin defendants is not complicated: the Ionin defendants bought low-end equipment wholesale that is nominally covered by generally phrased prescriptions and then billed ATIC for high-end equipment. Numerous, specific transactions in the complaint detail this practice. All Ionin's affidavits had to do to demonstrate a meritorious defense was to describe the piece of equipment actually delivered to some of these patients, produce the wholesale invoice for that equipment, and submit an affidavit from the salesman or the patient for the piece of equipment reflected in the wholesale invoice. None of that appears. Indeed, Ionin's affidavit argues that as to each of ATIC's allegations about specific transactions, "I do not understand how this allegation can even be made since Active Care did not submit wholesale invoices" to ATIC. Exactly. So where are the records describing the equipment purchased and that patients actually received? Not in Ionin's affidavits.

Ionin attempts to explain this by arguing that because he charges regulated prices, and because wholesale prices vary, he does not match up any particular piece of equipment provided to a patient with a particular wholesale purchase. If he is telling the truth, then, frankly, no business should run that way; it is rife with the opportunity for fraud if there is no documentation connecting the purchase of an item, the bill to the insurance company for that item, and the cost of the item sold to that customer. If a patient receives a device that was bought by Active Care in Wholesale Purchase A for $10, Active Care should maintain records showing that the wholesale price was $10, and not part of a separate, Wholesale Purchase B for $12.

In a regulated industry like medical devices, the scheduled allowable price is derived in part from the wholesale cost. Ionin's declaration that he can't match up the wholesale cost of any particular item to any particular patient would allow him to charge the highest scheduled price he paid the wholesaler even if that price was not the basis of the sale to the patient – exactly what ATIC alleges.

To take a specific example, the complaint alleges – and submits documentation – of two examples of paid, and several examples of unpaid, claims for a heat lamp using insurance code EO205, and billing ATIC $160 each, when, in fact, the heat lamp provided was a cheap, hand held heat lamp, reimbursable as a Non-Fee Schedule item, for, at most, $20. It should have been easy, armed with the complaint's documentation, for the Ionin defendants to back out these transactions and demonstrate that, in fact, the heat lamp they supplied in at least a substantial number of these transactions was the scheduled $160 item, not an unscheduled $20 item. But they do not; they offer merely the general conclusion that they provided appropriate items and only billed for those items.

The closest the Ionin defendants get to confronting ATIC's specific allegations is to mention egg crates and bed boards. Ionin accuses ATIC of mislabeling those items, but he offers no documentation showing what any patient actually was provided, its cost, and his markup. Instead, he offers general conclusions, like referring to a provided piece of medical equipment as "of high quality that met all the specifications" of the insurance schedule.

Having ignored the case for so long, and being in possession of all the documentation necessary to rebut ATIC's allegations (if it exists), it is not too much to have expected the Ionin defendants to specifically refute at least part of ATIC's detailed list of fraudulent transactions. They have not, and have therefore failed to demonstrate a meritorious defense on the merits.

Nor have the Ionin defendants demonstrated a meritorious defense based on the statute of limitations. Defendants' arguments are conclusory and fail to identify which fraudulent acts alleged in the complaint fall outside the applicable limitations period. Defendants do not provide any evidence countering the application of equitable tolling or the discovery rule to plaintiff's allegations that it could not earlier discover the fraud because of defendants' efforts to conceal it. See State Farm Mut. Auto. Ins. Co. v. Cohan, No. 09-CV-2990, 2010 WL 890975, at *4 (E.D.N.Y. Mar. 8, 2010), aff'd, 409 F. App'x 453 (2d Cir. 2011) (defendants did not establish a meritorious defense based on the statute of limitations because the supporting "affidavit does not explain what claims the limitations period would preclude, nor does it consider whether equitable tolling or the discovery rule would negate a statute of limitations defense"). The four-year civil RICO limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury, see Gov't Emps. Ins. Co. v. Mayard, No. 15-CV-4077, 2019 WL 3716069, at *5 n.1 (E.D.N.Y. May 9, 2019), report and recommendation adopted, 2019 WL 4141030 (E.D.N.Y. Aug. 30, 2019). Plaintiff alleged that it could not have earlier discovered the fraud due to defendants' concealment, and defendants have made no attempt to refute that.

### III. Prejudice

The Ionin affidavits also fail to persuade me that ATIC would not be prejudiced if I vacated the default. Strangely, there is no representation that the Ionin defendants have preserved the necessary documents to defend this action, and Ionin's testimony that he does not match up wholesale documents with invoices to ATIC gives me no comfort that documents have not already been destroyed. Moreover, ATIC has pointed out that in two other actions in which the Ionin defendants were sued on similar claims, documents were in fact destroyed. See ECF 140-1, The GEICO Action (Mar. 10, 2014) (defendants claiming a flood destroyed all invoices

16

from wholesalers); ECF 361, Allstate Ins. Co. v. Yadgarov, No. 11-cv-6187 (E.D.N.Y. Aug. 28, 2014) ("The Allstate Action") (citing same flood). In those two actions, Ionin stated that if called upon to testify in connection with these documents, he would invoke his privilege against self-incrimination.[3] ECF 152, The GEICO Action (Apr. 10, 2014) (conceding spoliation and stating that Ionin would assert Fifth Amendment right at hearing on issue); ECF 431, The Allstate Action (Apr. 16, 2015) (same).

Nor has Ionin proffered the identity, location, or number of witnesses who could support his general denials. There is not the name of a single device-fitter, patient, salesperson, or bookkeeper who could corroborate his story.[4] It is the Ionin defendants' burden to show the absence of prejudice to ATIC, see State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada, 230 F. Supp. 2d 313, 316 (S.D.N.Y. 2002), and their submissions and prior litigation history compel the contrary conclusion – getting discovery out of them would be like pulling teeth. They have not met their burden.

## CONCLUSION

The Ionin defendants' motion to vacate the default judgment is denied.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       June 29, 2021

---

[3] In his reply affidavit for the instant motion, Ionin asserts that he "did not assert any Fifth Amendment right in the GEICO action." That is plainly false. See ECF 152, The GEICO Action (Apr. 10, 2014) ("The Ionin Defendants wish to inform Your Honor that Defendant Russell Ionin will assert his Fifth Amendment right not to be compelled as a witness against himself at today's hearing" on plaintiff's motion for sanctions).

[4] Although patient identities are protected by HIPAA, had Ionin disclosed that he was willing to produce such information, I could have ordered it to be filed under seal.

17